# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

KATHERYN BOOTH, et al.,                    )
                                           )
      Plaintiffs                  )
                                           )
                                           )
      v.                          )  **Civil Case No. 04-1909 (RJL)**
                                           )
DISTRICT OF COLUMBIA, et al.,              )
                                           )
      Defendants.                 )

St

## MEMORANDUM OPINION
(April 1__, 2010) [# 45 and 46]

This case comes before the Court on the Second Amended Complaint ("SAC") of

12 plaintiffs who allege that their employer, the District of Columbia Department of

Consumer and Regulatory Affairs ("DCRA"), unlawfully discriminated and retaliated

against them in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*

("Title VII"), the Age Discrimination in Employment Act, 29 U.S.C. § 623 *et seq.*,

("ADEA"), the D.C. Whistleblower Protection Act, D.C. Code § 1-615.51 *et seq.*,

("DCWPA"), and the D.C. Human Rights Act, D.C. Code § 2-1401 *et seq.* ("DCHRA").

Defendants moved to dismiss plaintiffs' claims, or, in the alternative, for summary

judgment. After consideration of the parties' pleadings, relevant law, and the entire

record herein, summary judgment is GRANTED for the defendants.

## BACKGROUND

On October 23, 2003, twelve DCRA employees sent a letter to the DCRA Director and other D.C. Government Officials ("October 23 letter" or "grievance letter"). [1] (SAC [# 14] ¶ 4.) The letter complained of "practices that the [employees] perceived to be hampering their efforts to serve the residents of Washington." (*Id.*) In addition, the letter set forth instances which they felt constituted unlawful discrimination against women and older workers. (*Id.*) Specifically, the letter contends that mismanagement at the DCRA "was resulting in obstructions to enforcement of the housing code as well as unfair treatment of the Housing Inspectors." (*Id.* ¶ 25.)

Upon receiving the letter, the DCRA, according to plaintiffs, embarked upon a campaign of retaliation, including formal and informal reprimands, poor performance evaluations, denials of promotion, transfer to less favorable assignments, and denials of access to facilities and tools required to perform their jobs. (*Id.* ¶ 5) One plaintiff, Shirley Buie, claims she was retaliated against from an even earlier date, due to the fact that she had sent her own grievance letter several months earlier to many of the same officials who were later copied on the October 23 letter. (*Id.* ¶ 48.) Indeed, Buie's August 20, 2003 letter raised many of the same mismanagement allegations were contained in the October 23 letter. (*Id.* ¶ 48-51.)

---

[1] In all, twenty one DCRA employees signed the October 23 letter, but only twelve of those employees are plaintiffs in this suit. (SAC ¶ 23.) The other D.C. Government officials who received the letter included the directors of the Office of Labor Relations and the Office of Personnel, the Chair of the D.C. Council's Committee on Consumer and Regulatory Affairs, and the Chief Administrator of the Office of the Mayor. (*Id.* ¶ 24.)

In addition to their retaliation claims, Buie, Colbert, and Johnson allege that they suffered discriminatory non-selection when the DCRA did not hire them for certain management positions. In particular, Buie complains she was passed over for a Branch Chief position that the DCRA never posted. (Buie Opp'n [# 52] Ex. 1 ("Buie Decl.") ¶ 9; SAC ¶ 110.) Colbert and Johnson complain that they were not promoted to two available Lead Housing Inspector positions. (SAC ¶¶ 68, 79.) While Buie and Colbert contend that their non-selection was gender- and age-based because they were passed over in favor of less experienced men, (Buie Decl. ¶ 9; SAC ¶ 71), Johnson, himself a man, only contends that the DCRA never gave him a reason for their "failure to promote him." (SAC ¶ 81.)

At various points in 2004, all but two of the plaintiffs, Latson and Myers, notified the District of Columbia of their intent to sue the DCRA, pursuant to D.C. Code § 12-309. (Def.'s Mot. [# 45] at 10-11.) In addition, the majority of plaintiffs filed Equal Employment Opportunity Commission ("EEOC") complaints and received right to sue letters. Johnson received his on August 17, 2004. Brown, Booth, and Colbert received theirs on December 23, 2004, and Burchette and Small received theirs on February 21, 2005. (Pl.'s Surreply [# 74] Ex. 1 at 1-6.) Defendants concede that Buie filed an EEOC charge on March 12, 2004, although Buie has not directed the Court to any evidence regarding this charge, or, for that matter, her right to sue letter. (Def.'s Surreply [# 67] at 14.)

On November 4, 2004, plaintiffs filed their lawsuit in this Court. Six months later,

3

they filed a Second Amended Complaint. Defendants subsequently moved to dismiss the complaint, or in the alternative, for summary judgment. Buie, who is represented by her own counsel, filed her own opposition to defendants' motion. Later, the remaining plaintiffs, who all share the same counsel, filed their opposition. The parties subsequently filed supplemental briefing. Defendants' motion is now ripe.

## LEGAL STANDARD

At issue is defendants' Motion to Dismiss, or in the alternative, Motion for Summary Judgment. Summary judgment is the appropriate standard here because the Court and the parties, who engaged in extensive discovery, rely on matters outside the pleadings.[2] Summary judgment must be granted when the pleadings and the record demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). While the moving party "always bears the initial responsibility of informing the district court of the basis for its motion," it does not bear an evidentiary burden to produce evidence affirmatively negating the non-movant's claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Rather, once a movant challenges the sufficiency of the nonmoving party's evidence on an essential element of a claim, the nonmoving party can survive summary

---

[2] Consistent with the Federal Rules of Civil Procedure and the law of our Circuit, all plaintiffs have had a reasonable opportunity to present evidence outside the pleadings in opposition to defendants' motion. *See Wiley v. Glassman*, 511 F.3d 151, 160 (D.C. Cir. 2007).

judgment only if it "go[es] beyond the pleadings" and "designate[s] 'specific facts

showing that there is a genuine issue for trial.'" *See id.* at 324 (citing Fed. R. Civ. P.

56(e)).

When considering a motion for summary judgment, the Court must view the

evidence in a light most favorable to the nonmoving party and accord that party the

benefit of all reasonable inferences. *See Salazar v. Wash. Metro. Transit Auth.* 401 F.3d

504, 507 (D.C. Cir. 2005). However, if a nonmoving party intends to defeat summary

judgment through factual representations made in its own sworn affidavits, it must

"support [its] allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671,

675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or it

must provide "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338

(D.C. Cir. 2006). "Indeed, for the court to accept anything less 'would defeat the central

purpose of the summary judgment device, which is to weed out those cases insufficiently

meritorious to warrant the expense of a jury trial.'" *Powell v. Lockhart*, 629 F. Supp. 2d

23, 34 (D.D.C. 2009) (quoting *Greene*, 164 F.3d at 675).

## ANALYSIS

### I.      Count One – Title VII Retaliation

Title VII prohibits government agencies from retaliating against employees who

engage in protected behavior by asserting their rights. *See Holcomb v. Powell*, 433 F.3d

889, 901 (D.C. Cir. 2006). A plaintiff can make out an unlawful retaliation claim by

establishing, through the presentation of evidence, that he or she "suffered (i) a materially

adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (citing *inter alia* 42 U.S.C. § 2000e-3(a)).

Plaintiffs Booth, Brown, Buie, Burchette, Colbert, Johnson, and Small claim that they were retaliated against as a result of their participation in one or both of the grievance letters they sent to the DCRA. Unfortunately for them, their evidence does not constitute a sufficient showing, if true, to support a retaliation claim. Indeed, their evidence is defective with respect to causation because the retaliatory acts they allege either occurred prior to their participation in the grievance letters, or so long after as to be too remote for legal viability. Finally, a number of the alleged retaliatory acts do not amount to "materially adverse action." How so?

As to the first category, Booth, Brown, Buie, and Burchette all bring allegations of supposedly retaliatory events which in fact occurred *before* they even signed on to any grievance letter. Booth, for example, complains of an "[a]dmonition" she received on February 6, 2003. (SAC ¶ 38). Similarly, Brown complains that he was the subject of a derogatory email and received a diminished performance evaluation in April and September, 2003, respectively. (*Id.* ¶ 42-43.) Burchette complains of an August 2003 reassignment. (*Id.* ¶ 55.) None of these acts, however, could have been retaliatory because they pre-date these plaintiffs' participation in the October 23, 2003 letter. For the same reason, Buie cannot argue that she was retaliated against when denied a computer and other equipment that she claims was necessary for to do her job, because

these acts occurred two days *prior* to her August 20 letter. (*Id.* ¶¶ 47-48, 51(g).) While the plaintiffs try to salvage these allegations by claiming that they all publicly opposed mismanagement and discrimination at the DCRA prior to signing their grievance letters, (SAC ¶¶ 36, 40, 46, 52), the record is simply devoid of any such evidence.

With respect to alleged retaliatory acts which are several months removed from the grievance letters, our Circuit has made it clear that there is a point in time where temporal proximity becomes too remote, without more, to permit an inference of causation. Thus, while adverse personnel action which occurs "shortly" after protected activity may give rise to an inference of causation, *Holcomb v. Powell*, 433 F.3d 889, 903 (D.C. Cir. 2006), action which occurs more than three or four months after protected activity is not likely to qualify for such a causal inference. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (per curiam) (citing with approval circuit cases finding three and four months to be too temporally remote to establish causation).

Accordingly, because the record is absent of any other evidence which might suggest causation, the plaintiffs' claims that fail for remoteness are: (1) Booth's claims that she received a diminished performance evaluation on May 7, 2004, and a reprimand, proposed on March 5 and sustained on April 20, 2004, (SAC ¶ 38); (2) Brown's claim that, on March 3, 2004, he was denied use of a government vehicle that had been assigned to him, (*id.* ¶ 44); (3) Buie's claims that she was similarly denied use of a government vehicle on February 10, 2004 and suspended for ten days in September 2004, (*id.* ¶¶ 51(h), (j)); (4) Burchette's claim that she received a letter of admonition around

7

March 5, 2004, (*id.* ¶ 56); (5) Colbert's claim that she was notified on April 30, 2004 of her placement on leave restriction, (*id.* ¶ 74); and (6) Small's claim that he received a diminished performance evaluation on April 15, 2004, (*id.* ¶ 104).

Finally, as for the remaining allegations in Count One, plaintiffs have not raised a genuine issue of material fact as to whether they actually suffered "materially adverse" retaliatory acts. Under Title VII, a "materially adverse action" is defined as one that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C.Cir.2006)). The evidence on record demonstrates that no such action occurred in this case.

For instance, Booth, Buie, and Johnson complain they suffered diminished performance evaluations in the months immediately following their grievance letters. (SAC ¶ 38, 51(f), 82). Generally, these acts are not "adverse" under Title VII unless they precipitate tangible negative consequences. *See Baloch*, 550 F.3d at 1199. More specifically, in our Circuit, poor performance evaluations are not "adverse" unless "attached to financial harms." *Id.* (citing *Weber v. Batista*, 494 F.3d 179, 185-86 (D.C. Cir. 2007)). Even assuming that plaintiffs had the uniformly stellar performance evaluations they claim prior to joining in the grievance letters, and assuming *arguendo* that their evaluations suffered because of their protected activity, plaintiffs have not proffered *any* evidence to show that their diminished evaluations triggered tangible loss. To the contrary, the evidence on record suggests just the opposite: in October 2006, all

plaintiffs received *promotions* and corresponding *pay raises*. (Pl's Opp'n [# 59] Ex. 3, Brown Affidavit ¶ 7.)

Similarly, Buie and Colbert complain they were retaliated against when, shortly after they signed on to the grievance letters, they received letters of admonition, (SAC ¶¶ 51(a), (d)) and a memorandum of direction, (*id.* ¶ 73). Such letters are not "adverse," however, if they contain no abusive language and instead offer "constructive criticism." *See Baloch*, 550 F.3d at 1199. Buie and Colbert did not introduce these letters into the record, nor have they directed the Court to any other evidence concerning the language used in those letters. Absent such evidence, there is no issue of fact as to whether the letters were "abusive," and therefore, in turn, no material fact as to whether these actions were "materially adverse."[3]

Lastly, Buie complains she was transferred to a less favorable work assignment several weeks after she sent her August 20 grievance letter. Transfers, however, are not "adverse" if they only precipitate "purely subjective injuries." *Holcomb*, 433 F.3d at 902 (quoting *Forkkio v. Powell*, 306 F.3d 1127, 1130 (D.C. Cir. 2002)). While a transfer can be "adverse" if the new position requires "significantly different responsibilities," our Circuit has found that "dissatisfaction with a reassignment, public humiliation, or loss of reputation . . . are not adverse actions." *Id.* Here, Buie has not provided *any* evidence comparing the responsibilities of the positions from and to which she was transferred.

---

[3] Buie additionally claims that a letter she received from the City Administrator, which declined to investigate her allegations of discrimination at the DCRA, was a retaliatory act. (SAC ¶ 51(c).) This letter, like the letters of reprimand and admonition, is absent from the record. Furthermore, it is less than clear how such a letter could constitute a "materially adverse action."

All she has offered is her contention that her transfer was to a "less favorable assignment in a different ward." (Buie Decl. ¶ 7.) Accordingly, Buie has failed to demonstrate the existence of an issue of material fact with respect to her allegedly retaliatory transfer.

In sum, plaintiffs have failed to respond to defendants' Motion for Summary Judgment as to Count One by showing genuine issues for trial. Absent sufficient evidence to demonstrate causation or materially adverse action, their claims of retaliation in violation of Title VII must fail.

## II.    Count Two – DCWPA Retaliation

Next, all twelve plaintiffs claim that the DCRA retaliated against them in violation of the District of Columbia's Whistleblower Protection Act ("DCWPA"). The D.C. Code § 1-615.53 states: "A supervisor shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure or because of an employee's refusal to comply with an illegal order." Employees aggrieved by violations of §1-615.53 may bring private civil actions, provided they abide by the general notice requirements of D.C. Code § 12-309—the statutory provision which requires six months notice prior to suing the District for unliquidated damages. D.C. Code § 1-615.54.

First, as to Latson and Myers, they failed to comply with §12-309's notice requirement. In response to this suit, the District searched the locations where § 12-309 notices are maintained. It did not find either of these plaintiffs' notices, although it did find notices from all of the remaining plaintiffs. (Def.'s Mot. Ex. 1, Liley Affidavit ¶ 2-

5.) Latson and Myers respond by arguing they "were informed by their former counsel . . . that he had provided timely notice of their D.C. Whistleblower Protection Act claims," and that, as of January 24, 2008, they were "still awaiting copies of the notice from their counsel." (Pl.'s Opp'n at 1.) Over two years have expired since then and Latson and Myers still have not provided any supplemental evidence to corroborate that they did in fact submit the necessary notices. Therefore, their claims against the District under the DCPWA are barred by § 12-309.[4] *See District of Columbia v. Dunmore*, 662 A.2d 1356, 1359 (D.C.1995) (noting that "compliance with [§ 12-309] is 'mandatory as a prerequisite to filing suit against the District.'" (quoting *Hardy v. District of Columbia*, 616 A.2d 338, 340 (D.C. 1992)).

As for the remaining plaintiffs, the temporal remoteness analysis applied under Count One is equally applicable here. As such, claims premised on alleged retaliatory acts over four months *after* plaintiffs' protected activity do not permit an inference of causation. Again, absent additional evidence of causation, which is lacking here, these claims must fail. *See Johnson v. District of Columbia*, 935 A.2d 1113, 1120 (D.C. 2007) ("[W]e reject the four-month lapse of time as proof of a causal connection between the protected disclosures and the adverse actions."). This includes the following claims: (1) those of Booth, Buie, Brown, Burchette, Colbert, and Small dismissed under Count One;

---

[4] The Court rejects defendants' overly narrow argument that *all* of plaintiffs' DCWPA claims must be dismissed because their § 12-309 notices did not "mention[] whistleblowing or a claim pursuant to the Whistleblower Act." (Def.'s Mot. at 10.) As defendant concedes, "preciseness" is not required in a notice statement. *See Tolson v. District of Columbia*, 860 A.2d 336, 343 n.1 (D.C. 2004). What is required is that "the Mayor . . . be made aware of the actions which led to the charges," *id.*, and plaintiffs' § 12-309 notices sufficed to do so.

(2) Butler's claim concerning a March 8, 2004 notice of reprimand, (SAC ¶ 61); (3)

Lovett's claims concerning a performance evaluation from May 7, 2004, and a work

assignment given to him in June 2004, (*id.* ¶ 93-94); and (4) Miller's claim concerning a

performance evaluation from May 2004, (*id.* ¶ 99).

Additionally, certain plaintiffs' claims under this Count must be dismissed

because they are not premised on "[p]rohibited personnel action[s]," as the DCWPA

requires, even though such acts may have occurred shortly after plaintiffs' protected

activity. Whether conduct constitutes a "[p]rohibited personnel action" requires an

analysis similar to, but not precisely coextensive with, the one employed under Count

One to determine whether a Title VII "materially adverse action" occurred. The DCWPA

defines "[p]rohibited personnel action" to include:

> recommended, threatened, or actual termination, demotion,
> suspension, or reprimand; involuntary transfer, reassignment, or
> detail; referral for psychiatric or psychological counseling; failure to
> promote or hire or take other favorable personnel action; or
> retaliating in any other manner against an employee because that
> employee makes a protected disclosure or refuses to comply with an
> illegal order . . . .

D.C. Code § 1-615.52(a)(5). That diminished performance evaluations, like those

complained of by Booth, (SAC ¶ 38), Buie, (*id.* ¶ 51(f)), and Johnson, (*id.* ¶ 82), are not

explicitly included in the provision is not necessarily fatal to these claims. Section 1-

615.52 makes clear that its list of "[p]rohibited personnel action[s]" is not exhaustive.

But, as the Section also makes clear, for an action that is not on the list to be prohibited, it

must be caused by an employee's protected activity. Therefore, to survive summary

judgment on their DCWPA claims involving performance evaluations, plaintiffs had to submit evidence demonstrating a causal link to their protected activity. They did not.

Finally, for the remainder of claims under this Count, there is simply insufficient evidence to survive summary judgment. For instance, Buie complains of letters of admonition from August 27 and December 2, a September 1 transfer, and a December 15 ten-day notice of official reprimand issued December 15, 2003. (SAC ¶¶ 51(a), (b), (d), (e)). All of these acts appear to be "[p]rohibited personnel action[s]," and they are alleged to have occurred within three to four months of Buie's protected activity. Critically, however, Buie has offered virtually no evidence to corroborate or bolster her claims. In fact, aside from Buie's own self-serving affidavit, there is simply no evidence on the record to suggest these events even occurred. Most conspicuously absent are the letters themselves. Thus, Buie cannot survive summary judgment because there is not enough evidence for a jury to conclude that a prohibited personnel action occurred, let alone that any such action was motivated, even in part, by her protected activity. *See* *Johnson*, 935 A.2d at 1120-21. As our Circuit has noted, "the central purpose of the summary judgment device . . . is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675. Considering the amount of time Buie has had to conduct discovery and her absolute failure to produce a shred of evidence in response to defendants' Motion for Summary Judgment, her case can only be considered "insufficiently meritorious" to proceed any further.[5]

---

[5] The same is true of Butler's unsupported claim of a December 9 reprimand, (SAC ¶ 60), and

13

## III. Count Three – DCHRA Retaliation

The law of retaliation is the same under the D.C. Human Rights Act ("DCHRA")
as it is under Title VII. *See Fowler v. District of Columbia*, 404 F. Supp. 2d 206, 209-10
(D.D.C. 2005). Accordingly, the Count Three claims of Booth, Brown, Buie, Burchette,
Colbert, Johnson, and Small, must fail for the same reasons they did in Count One.
Additionally, Latson and Myers cannot proceed on this Count because of their failure to
provide the District with § 12-309 notices. *See Kennedy v. District of Columbia*, 519 F.
Supp. 2d 50, 57-59 (D.D.C. 2007). Finally, the claims of Butler, Lovett, and Miller must
fail as well. Of these three plaintiffs, only one alleges an act within the requisite three-to-
four month temporal causation window. This act, though—the December 9, 2003
reprimand complained of by Butler—is not "materially adverse" for the reasons set forth
under Count One. Thus, no plaintiff can survive summary judgment on this Count either.

## IV. Count Four – Title VII and ADEA Discrimination

Count Four contains Buie, Colbert, and Johnson's discriminatory non-selection
claims. These three plaintiffs claim they were discriminated against when they were not
selected or invited to apply for higher-level positions that they believe they were
qualified to hold. Each claims that age was motivating factor in his or her non-selection.
(SAC ¶ 133-43.) Buie and Colbert also claim that gender played a role in their non-
selection. (*Id.* ¶ 142.) Thus, the Court must resolve one central question: "Has the

---

Colbert's unsupported claim of an October 31 "Memorandum of Direction," (*id.* ¶ 73).

employee produced sufficient evidence for a reasonable jury to find that the employer's

asserted non-discriminatory reason was not the actual reason and that the employer

intentionally discriminated against the employee on the basis of race, color, religion, sex,

or national origin [or age]?" *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493-94

(D.C. Cir. 2008) (Title VII); *see also Baloch v. Kempthorne*, 550 F.3d 1191, 1196

(applying *Brady* framework to ADEA claim). For the following reasons, Buie, Colbert,

and Johnson failed to produce such evidence.

These three plaintiffs complain that they were not given the opportunity in

September 2004 to apply for a vacant position as Acting Branch Chief for the Eastern

Sector. (SAC ¶¶ 136, 137, 139.) They fail, however, to rebut defendant's legitimate

explanation that none were qualified for the position. As the DCRA explains, the Branch

Chief position had a requisite time in grade requirement that none of these three plaintiffs

met.[6] (Def.'s Mot. at 18.) Additionally, Colbert and Johnson claim they applied for Lead

Housing Inspector positions in September 2003 but found out a few months later that

DCRA hired younger employees instead. (SAC ¶¶ 138, 140.) Defendant explains,

though, that one of the candidates hired was entitled to a residency preference because he,

unlike Colbert and Johnson, lived in the District. (*Id.*) Moreover, Colbert and Johnson

scored lower on their interviews for the position than the two employees ultimately

selected. (*Id.*) Buie, Colbert, and Johnson have offered no evidence to suggest that these

---

[6] In fact, defendants claim that there never even was a vacant position for the Branch Chief position. According to the DCRA, there has been only one vacant Branch Chief position, in January, 2005, but that vacancy was not to scheduled to exceed 120 days and was therefore exempt from competitive hiring requirements. (Def.'s Reply [# 56] at 10.)

legitimate reasons were not the true cause of their non-selection. Accordingly, they

cannot survive summary judgment on their discrimination claims. [7]

## CONCLUSION

Thus, for all of the above reasons, summary judgment is GRANTED for the

defendants. An Order consistent with this Memorandum Opinion was previously issued

[# 77].

RICHARD J. LEON
United States District Judge

---

[7] While defendants' Motion for Summary Judgment was being briefed, plaintiffs sought to incorporate their non-selection allegations into their retaliation claims. But, because DCRA legitimately explained their non-selection, these claims must fail whether cast in terms of discrimination or retaliation.